IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| United States of America | : | |
| --- | --- | --- |
| | : | |
| v. | : | Case No.  1:20-CR-72-MJM |
| | : | |
| Kunle Alabi | : | |
| | : | |
| Defendant | : | |

**Motion To Dismiss Due to The Violation of Sixth Amendment Right to Speedy Trial**

On February 20, 2020, the Government indicted Kunle Alabi for conspiracy to distribute and possess with intent to distribute controlled substances. Then it waited.

And waited.

And waited some more.

The Government waited approximately 35 months before arresting Mr. Alabi who, during that period, was living a normal life and having contact with state and federal government agencies. Because Mr. Alabi was unaware of the pending indictment, and there is no evidence to suggest that he was making efforts to evade arrest, the delay in arresting him is attributable solely to the Government.

 Government's delay in arresting Mr. Alabi is presumptively prejudicial and resulted in actual prejudice to Mr. Alabi, who's defense is now impaired. As a result, Mr. Alabi's Sixth Amendment right to speedy trial has been violated. For the reasons provided below, Mr. Alabi respectfully requests the Court to dismiss the indictment with prejudice.

**PROCEDURAL AND FACTUAL BACKGROUND**

On January 21, 2017, Kunle Alabi was stopped after debarking a motorcoach at the Baltimore Travel Plaza. Mr. Alabi along with two others were stopped, searched and questioned.

1

As a result of the search, officers recovered amongst other items, suspected heroin. After the search and subsequent custodial interrogations were complete, officers released Mr. Alabi.

Approximately 37 months later, on February 20, 2020, a criminal indictment was returned charging Mr. Alabi with conspiracy to distribute and possess with intent to distribute controlled substances. The charge appears to be based solely on law enforcement's contact with Mr. Alabi on January 21, 2017. ECF 1. An arrest warrant was filed with the Court and received by the U.S. Marshals on that same day. On or about January 25, 2023 – nearly three years later, 35 months to be exact – officers arrested Mr. Alabi in Aurora Illinois, where he has been living since 2018

From the time of his initial stop to the date of his arrest, Mr. Alabi lived his life unaware of the indictment and arrest warrant. After moving to Illinois, Mr. Alabi stayed to build a life. He never traveled outside of the United States. In October 2019, Mr. Alabi applied for a marriage license and was married in Kane County, Illinois. He rented an apartment with his wife and opened a joint bank account with her. In January 2021, Mr. Alabi was issued a Temporary Visitor Driver's License (TVDL) through the Office of the Illinois Secretary of State (SOS). In March 2021, Mr. Alabi, through his wife, filed an application to adjust his immigration status and an application for employment authorization with the U.S. Citizenship and Immigration Services.[1] Once authorized, Mr. Alabi worked as an Uber Driver.

## ARGUMENT

The Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI. Under *United States v. Thomas,* the filing of the indictment and warrant on February 20, 2020,

---

[1] The address and phone number listed on Mr. Alabi's I-485, application for adjustment of status, is the same address he lived at the time of his arrest and where he lives at now.

triggered Mr. Alabi's Sixth Amendment speedy trial rights. *See Thomas,* 55 F.3d 144, 149 (4th Cir. 1995) (holding that "the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment"). *See also United States v. Doggett*, 505 U.S. 647, 655 (1992). "Excessive delay in prosecuting a defendant after he is indicted ... violates this Sixth Amendment right." *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006) (*citing Barker v. Wingo*, 407 U.S. 514 (1972)).

In *Barker v. Wingo*, the Supreme Court directed lower courts to weigh four (4) factors in analyzing claims that the government delayed unduly in commencing the prosecution of an indicted defendant. These factors are (i) the length of the delay, (ii) the reason for the delay, (iii) whether the defendant asserted his right to a speedy trial once he learned of the criminal charges, and (iv) the prejudice the delay caused the defendant. 407 U.S. at 533. In *Barker,* the Supreme Court rejected an inflexible, fixed-time approach in favor of a balancing test in which "the conduct of both the prosecution and the defendant are weighed." *Id*. at 529-30. Here, an application of each of these factors and a balancing of those factors weighs heavily against the Government, and thus supports dismissal of the charges in the Indictment.

**I.     The Delay Between Mr. Alabi's Indictment and His Arrest is Presumptively Prejudicial.**

The first factor entails " 'a double enquiry': First, '[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.' " *Tchibassa*, 452 F.3d at 922 (quoting *Doggett v. United States*, 505 U.S. 651-52 (1992)). "Once the accused has made this showing, the court must consider the extent

3

of delay, with the understanding that the presumed prejudice to the defendant intensifies over time." *United States v. Boone*, 706 F. Supp. 2d 71 (D.D.C. 2010) (citing *Doggett*, 505 U.S. at 651).

There is no bright line rule which establishes a time frame necessary to meet the threshold requirement for presumptive prejudicial delay. *Barker*, 407 U.S. 514; *Doggett,* 505 U.S. 647; *see also United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005). The Supreme Court has observed that "[*d*]*epending on the nature of the charges*, … "post-accusation delay [is] 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652, n.1 (emphasis added). Indeed the Fourth Circuit has noted that a postaccusation delay "as short as eight months may qualify as presumptively prejudicial in cases of limited complexity." *United States v. Burgess*, 684 F.3d 445, 452 (4th Cir. 2012) (citing *Woolfolk*, 399 F.3d at 598). Ultimately, a delay of one year is the "point at which courts deem the delay unreasonable enough to trigger the *Barker* [i]nquiry." *Id*.

Given the nature of the case, the nearly three-year delay between indictment and arrest is a considerably lengthy delay that exceeds the "bare minimum" required for "judicial examination of the claim." *Doggett*, 505 U.S. at 65. As a threshold matter, this is not an overly complex case. While the charge is conspiracy to distribute and possess with intent to distribute controlled substances, the indictment alleges a conspiracy between January 19, 2017, and January 21, 2017 – a mere two days. Importantly, based on information contained in discovery, it appears that the charge against Mr. Alabi stems solely from a single law enforcement contact on January 21, 2017. The length of delay between his indictment and arrest must be viewed in light of the nature of the charges against Mr. Alabi. And in this case, the charges are not overly complex so as to justify a lengthy delay.

Despite the non-complex nature of the charge, the delay between Mr. Alabi's indictment and his arrest was unjustifiably long. Mr. Alabi's Sixth Amendment right to speedy trial was triggered on February 20, 2020, upon the issuance of the indictment and arrest warrant. *Doggett*, 505 U.S. at 655; *Thomas,* 55 F.3d. 144. Thirty-five months elapsed from the date that the indictment was issued and Mr. Alabi's arrest on these charges. The length of delay, alone, is presumptively prejudicial. *See Grimmond*, 137 F.3d at 828 (finding that "a delay of 35 months is *a foriori* too long" and thus satisfying the threshold requirement under the *Barker* analysis). The nature of the 35-month delay is aggravated by the fact that this is not a overly complex case. Thus, the first *Barker* factor - the length of the delay – is presumptively prejudicial and weighs decidedly against the Government.

## II.     The Government Cannot Justify the Presumptively Prejudicial Delay.

As to the second *Barker* factor, the Fourth Circuit has said that a court should characterize the "reasons for a trial delay… as either valid, improper, or neutral." *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) (citing *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998)). "It is the Government's burden to establish the reason for delay." *Boone*, 706 F.Supp.2d at 76 (citing *Jackson v. Ray*, 390 F.3d 1254, 1261 n. 3 (10th Cir. 2004) (noting that "every circuit court to address the question has held that *Barker* places the burden to explain the delay on the State"); *United States v. Velazquez*, 749 F.3d 161, 175 (3d Cir. 2014) ("Just as the government has the burden to prosecute a case, it also has the burden to justify a delay once the *Barker* inquiry has been triggered.").

To carry out the affirmative constitutional obligation to try the defendant in a timely manner, the government must "pursue[] [the defendant] with reasonable diligence from his indictment to his arrest." *Doggett*, 505 U.S. at 656. "[R]easonable diligence" demands "serious

5

effort[s]." *Id.* at 652. Negligence in performance of this duty, while weighed against the government less heavily than a "deliberate attempt to delay trial," must "nevertheless ... be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." *Barker*, 407 U.S. at 531. "A defendant has no duty to bring himself to trial." *Id.* at 527. "A common thread throughout Sixth Amendment jurisprudence is that the second *Barker* factor - determining the party that bears blame for the delay - drives the ultimate balancing of factors and hence resolution of the speedy trial issue." *United States v. Fernandes*, 618 F.Supp.2d 62, 74 (D.D.C. 2009).

In this case, the Government cannot justify the presumptively prejudicial delay between Mr. Alabi's arrest and his indictment. From the time of his indictment until shortly before his arrest, Mr. Alabi lived regularly making contact with local and federal government agencies. Mr. Alabi did not flee the United States and took no specific steps with the intent of evading arrest. He had no knowledge of the warrant for his arrest or the indictment. He lived openly with his wife, making no attempted to conceal his identity. He opened a joint bank account with his wife. His cell phone was registered to his name. He obtained a Temporary Visitor Driver's License through the State of Illinois. He was making regular and consistent contact with the federal government through his immigration case. Furthermore, in light of the extensive amount of resources available to the Government and federal and state law enforcement, it is clear that the government was not reasonably diligent in arresting Mr. Alabi. *Boone*, 706 F.Supp.2d at 77 ("Given these facts, and given the wide-ranging resources commanded by MPD, the Court cannot conclude that the Government was reasonably diligent in arresting Boone in the four years after his indictment.") The government's failure to seek Mr. Alabi's arrest at his home for nearly three years is flatly inconsistent with its obligation of due diligence and Mr. Alabi's rights under the Sixth Amendment.

Even in circumstances where, unlike here, the defendant made efforts to evade arrest, the Government carries a responsibility to exercise reasonable diligence to make an arrest. In *Boone*, for example, the court stated that "[e]ven if this Court were to conclude that there is evidence to establish that Boone sought to evade arrest, the majority of the blame lies with the Government for its failure to exercise reasonable diligence" where, among other things, the Metropolitan Police Department relied primarily on the efforts of only one police officer to locate the defendant and failed to contact other governmental agencies for the defendant's updated address. *Id.* at 76-77. See e.g., *United States v. Weaver*, 949 F. Supp. 2d 73, 82 (D.D.C. 2013) ("In this case, the numerous steps that the government could have taken but did not, suggest a decidedly dilatory approach to their constitutional obligation to bring [the defendant] to trial. The government's efforts were too few and largely ineffectual.").

By all appearances, this case was either deliberately or inadvertently ignored by the government. In either case, the blame for the delay lies solely with the government. Here, the second *Barker* factor also weighs decidedly against the Government.

### III.    Mr. Alabi Was Not Aware of the Pending Indictment Prior to His Arrest.

Under the third factor of the *Barker* inquiry, the defendant must assert his right to a speedy trial in due course. *Barker*, 407 U.S. 514. Although a defendant's failure to demand his fundamental right to a speedy trial may be weighed against him, this rule does not apply where the defendant is unaware that he has been indicted. *See Doggett*, 505 U.S. at 653-54 (because the defendant was not aware of the indictment, he could not be "taxed for invoking his speedy trial claim only after his arrest"); *United States v. Frith*, 1999 WL 387849, at *4 (4th Cir. 1999) (unpublished) ("Of course, a defendant who is unaware that he is under indictment cannot be held to account for failing to assert his right to a speedy trial").

Though Mr. Alabi did not assert his right to speedy trial prior to his arrest in this case, he was not aware of the pending indictment. He cannot be held to account for failing to assert his right to speedy trial during the 35-month delay between indictment and his arrest. Thus, the third *Barker* factor does not cut against Mr. Alabi.

### IV.    Mr. Alabi Is Prejudiced By The Delay.

The final *Barker* factor examines whether a defendant suffered prejudice. *Barker*, 407 U.S. at 532-34; *Doggett*, 505 U.S. at 655-56. The Supreme Court has identified three forms of prejudice that may be caused by excessive delay: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Boone*, 706 F. Supp.2d at 77(quoting *Doggett*, 505 U.S. at 654). The *Barker* Court deemed the last form of prejudice as the "most serious," because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 533. Impairment of the accused's defense is the most serious form of prejudice and the most difficult form to prove. *Doggett*, 505 U.S. at 655. ("[E]xcessive delay presumptively compromises the reliability of a trial in many ways that neither party can prove or, for that matter, identify."); *Boone* 706 F.Supp.2d at 77. As such, when the *Barker* factors weigh in favor of the defendant, as they do here, no showing of actual prejudice is required because prejudice is presumed. "[P]rejudice is presumed in cases where the delay exceeds one year and the Government has failed to exercise reasonable diligence." *Boone*, 706 F.Supp.2d at 77; *Fernandes*, 618 F. Supp. 2d at 73 (D.D.C. 2009) ("no showing of prejudice is required when the delay is over a year and attributable to the government"). A showing of actual prejudice is only required if the government exercised reasonable due diligence in pursuing the defendant. *Doggett*, 505 U.S. at 656.

8

Here, because of the length of the delay and the government's lack of reasonable due diligence in arresting Mr. Alabi, prejudice is presumed, and there is no need for Mr. Alabi to demonstrate actual prejudice to his defense. Even if the Court finds that prejudice is not presumed, the government's delay has without question prejudiced Mr. Alabi's defense. While Mr. Alabi has been released on pre-trial release, he has now had to live under the tremendous mental and emotional strain of knowing that significant federal criminal charges are pending against him— charges that could subject him to a lengthy period of incarceration. *See Barker*, 407 U.S. at 533 (explaining that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility"). This case is dependent on some witness testimony. The government has provided no police body camera evidence, or any audio or video recorded evidence of any alleged statements made by Mr. Alabi. In light of the in all six-year delay from the initial stop and the arrest[2], memories of relevant witnesses have certainly faded. *Fernandes*, 618 F.Supp. 2d at 73 ("Even if the case does not depend 'exclusively' on witness testimony, it will doubtless depend on *some* witness testimony, and an additional 23-month delay has surely contributed to fading memories.").

Additionally, evidence central to Mr. Alabi's defense have been destroyed or no longer exist because of the passage of time. Surveillance from the Baltimore Travel Plaza that would have captured Mr. Alabi and those who were with him getting off the bus and their encounter with police can no longer be recovered. Surveillance footage from other locations mentioned in the discovery and critical to Mr. Albi's defense are also likely to no longer be available.

---

[2] The indictment was filed three years after the initial stop making the total delay from the initial stop to the arrest nearly six years.

9

There is also critical physical evidence that once was in the Government's possession that is no longer available. For example, evidence contained in discovery indicates that when law enforcement searched the black bag allegedly carried by Mr. Alabi on January 21, 2017, they recovered several items inside of it, including:

- A large plastic bag containing numerous amounts of wrapped power pellets of suspected heroin;
- Several phone payment receipts for phone number 917-624-8559 which were paid at Mobile Trendz, Inc., 235 Utica Avenue, Brooklyn, New York;
- A Bank of America card bearing the name Sharafa Buhari;
- A Bank of America transfer receipt with the name Sharafa Buhari, 2731 Wilkens Avenue, Baltimore, Maryland which detailed a $9,770.00 transfer to an individual in Nigeria;
- A box of razor blades.

During a review of the physical discovery in this case, it became clear that the Government did not preserve these items. Mr. Alabi is no longer able to test any of these items for any DNA or fingerprints, the results of which would challenge any notion that Mr. Alabi had opened the bag and was aware of its contents. This evidence is critical to Mr. Alabi's defense because it would challenge the Government's ability to prove whether Mr. Alabi had knowledge of the controlled substances inside the bag and, thus, any knowledge of (and voluntary participation in) any alleged conspiracy. *See United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010) (To obtain a conviction for a drug conspiracy, the Government must prove "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy."). The

Government's failure to preserve this physical evidence fundamentally impairs Mr. Alabi's defense.

Because of the delay in not only the indictment but also the arrest in this case, Mr. Alabi's defense is impaired in conducting its own investigation and recovering evidence that would build his defense. Though actual prejudice is usually difficult to prove, it is evident here. In light of these reasons, the fourth *Barker* factor also weighs heavily against the Government.

## **CONCLUSION**

Balancing all the factors in this case makes clear that Mr. Alabi's Sixth Amendment right to speedy trial were violated by the Governments lengthy delay in arresting him on the indictment. Based on the government's violation of Mr. Alabi's Sixth Amendment right to a speedy trial, Mr. Alabi respectfully requests that the Court dismiss the Indictment with prejudice.

Respectfully submitted,

James Wyda
Federal Public Defender
  for the District of Maryland

     /s/
_____
Sasha Garcon (#817494)
Francisco A. Carriedo (#816158)
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email: Sasha_Garcon@fd.org
       Francisco_Carriedo@fd.org

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, a hearing is requested on the defendant's motion. A hearing has been scheduled for 10:00 a.m. Friday, April 25, 2025.

/s/
Sasha Garcon

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, a copy of the foregoing was served via CM/ECF to the Government.

/s/
Sasha Garcon